UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD EARL MOONEY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 15-cv-05211 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 12, 18, 21).

After considering and reviewing the record, the Court concludes the ALJ erred in the consideration of whether plaintiff met neurological Listings 11.02 or 11.03 pertaining

to his seizure disorder. This harmful error must be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff, EDWARD EARL MOONEY, was born in 1979 and was 33 years old on the alleged date of disability onset of August 17, 2013 (*see* AR. 200-05). Plaintiff completed the 11th grade but has not obtained his GED (AR. 51). Plaintiff has some work experience as a stock clerk and cashier (AR. 56-57). He was terminated from his last job for attendance issues (AR. 53-54).

According to the ALJ, plaintiff has at least the severe impairments of "seizure-like disorder" with panic attacks, and chronic leukocytosis (20 CFR 416.920(c)) (AR. 19).

At the time of the hearing, plaintiff was living in his brother's home with his brother, sister-in-law and two young nephews (AR. 50-51).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 87-96, 98-110). Plaintiff's requested hearing was held before Administrative Law Judge James W. Sherry ("the ALJ") on September 12, 2014 (*see* AR. AR. 44-85). On September 26, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 14-43).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ fail to assess whether plaintiff met neurological listing 11.02 or 11.03 at step three of the

sequential evaluation process; (2) Did the ALJ err by failing to consider the impact of a seizure disorder on accessing the work place; (3) Does the limitation to simple repetitive and routine work activities preclude one of the jobs identified by the ALJ said to be consistent with the hypothetical question; (4) Are the jobs listed by the ALJ at step five either inconsistent with the RFC or do not exist in numbers sufficient to be considered substantial numbers; (5) Did the ALJ err by improperly evaluating the lay witness evidence; (6) Did the ALJ fail to provide clear and convincing reasons why plaintiff is not credible; (7) Did the ALJ fail to acknowledge, much less discuss, the diagnosis of chronic fatigue syndrome (CFS) and its effects on plaintiff; and (8) Did the ALJ fail to include all of the relevant limitations in the RFC and the questions posed to the VE (*see* Dkt. 12, pp. 1-2). Because the Court finds harmful error at step three of the disability analysis, the remaining issues must be reassessed as necessary on remand and will not be addressed below.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) Did the ALJ fail to assess whether plaintiff met neurological listing 11.02 or 11.03 at step three of the sequential evaluation process?

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than twelve months and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience. 20 C.F.R. § 416.920(d). The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), *as modified to render a published opinion by* 2005 U.S. App. LEXIS 3756 (9th Cir. 2005). The claimant must demonstrate that he medically equals each of the individual criteria for the particular Listing by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (*citing Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.926(a)). A claimant cannot rely on overall functional impact, but must demonstrate that the impairment equals each criterion in the Listing. *Id.*

In this case, plaintiff alleges that the ALJ erred by failing to address whether plaintiff met the criteria of the specific epilepsy Listings 11.02 and 11.03 (Dkt. 12, p. 4-5). The ALJ noted consideration of the neurological listings in 11.00, and found plaintiff did not meet the criteria of any Listing (AR. 20). However, the ALJ's decision did not include explicit discussion of whether plaintiff satisfied the particular criteria of the epilepsy Listings (AR 20-21). Plaintiff contends he meets the Listing criteria:

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subp. P, App. 1 §§ 11.02, 11.03.

The Commissioner argues plaintiff failed to provide evidence that he met the required seizures in spite of three months of prescribed treatment, offering several examples of the plaintiff's inconsistent medication compliance cited throughout the body of the ALJ decision (Dkt. 18, 5-6). Because the ALJ did not provide specific analysis of Listing 11.02 or 11.03, the Court cannot cite the ALJ's reasoning with any certainty. Thus the Commissioner's argument is post hoc rationalization, not the reasoning and actual findings offered by the ALJ. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)). Nonetheless, plaintiff has the burden of demonstrating medical findings equal in severity to all the criteria of a Listing. *See Kennedy, supra*, 738 F.3d at 1176. He must show the requisite seizure activity despite treatment in order to meet either Listing 11.02 or 11.03.

The ALJ found several examples of plaintiff's failure to take his medication and stabilization when treatment compliant (AR. 24). "The treatment record does not suggest that the claimant would have disabling symptoms if he stabilized on appropriate medications" (AR. 24). However, plaintiff's medical record is not as unambiguous as the ALJ's finding implies. In support, the ALJ cited a medical appointment in April 2013 in which plaintiff reported stopping his medication one week prior and experiencing seizure-type activity for nine months (AR. 24, 346). The ALJ noted an October 2013 appointment in which plaintiff complained of approximately one seizure per month, and reported that he "[g]enerally takes his Tegretol, but not always" (AR. 25, 420). During a March 2014 telephone conversation with an employee with disability determinations service, plaintiff said his new medication worked well and he had not had any seizures for the past couple of months (AR 26, 285). In June 2104 plaintiff admitted he had not taken his medication for two days (AR 27, 455). By July 2014, plaintiff was having two seizures per week, as a result of becoming homeless and unable to afford his medication (AR. 472-73). He reported this was an increase from the once weekly seizures he experienced while on medication (AR. 472-73). According to plaintiff, medication decreased the frequency but increased the severity (AR. 27, 472). Two weeks later, while once again on medication, he reported that he had experienced two more seizures. (AR. 28, 488).

After his hearing, but before the ALJ decision, plaintiff was evaluated by a neurologist (AR 531-32). Dr. W. Dale Overfield reported plaintiff had been on a sub-optimal dose of medication, which reduced the frequency of the seizures (AR. 531).

However, plaintiff still experienced seizures two to three seizures per week, or two to six seizures in a month with medication (AR 531). Due to the ineffectiveness of the previously prescribed low dose, Dr. Overfield increased plaintiff's medication to the minimum effective dosage (AR. 532). Thus, the most recent evidence suggests plaintiff took his medication as prescribed and continued to experience weekly seizures (AR. 531-32). It is unclear from the record whether Dr. Overfield's changes to plaintiff's medication eliminated the seizures. *Id*. Nevertheless, at the time that the ALJ issued his decision, the record did not support the ALJ's finding.

Additionally, lay testimony supports plaintiff's claims of weekly seizures despite medication. The most straightforward evidence of plaintiff's compliance with his medication came from hearing testimony from his sister-in-law, Emily Lynn Roberts (AR 67-71). Plaintiff lived with his brother and sister-in-law (AR. 67). Ms. Roberts testified that plaintiff "completely spazes out, his arms are wild. When he does fall down during a seizure, I have to roll him onto his left side to make sure that he doesn't cause—if he throws up, it doesn't choke him" (AR. 68). His whole body shakes from ten to thirty minutes (AR 68-9). After a seizure, plaintiff "loses anywhere from four to eight hours of memory. Sometimes he won't even remember the initial seizure, or anything prior to it. He'll think it's still breakfast when it's dinner time" (AR. 69). Ms. Roberts also noted that medication has decreased the frequency but increased the intensity of the seizure. "[I]nstead of him having the seizures every day like before, it's now twice, maybe three times a week. But the seizure itself lasts longer and is more intense. So it just kind of puts it off" (AR. 70). She testified plaintiff takes his medication if reminded, and he has

reminder notes all over the house, including taped to his coffee cup so he will be reminded first thing in the morning (AR. 70). She said if not reminded, "he can miss a dose which is not the best" (AR. 70).

As a family member, Ms. Roberts was a lay witness and her testimony, "is competent evidence that an ALJ must take into account," unless the ALJ gives germane reasons for disregarding the evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ discredited this testimony as inconsistent with plaintiff's treatment record of controlled seizures while on medication, unremarkable physical examinations, and inconsistent reports of seizure frequency (AR 34-35).

An ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). Therefore, the ALJ's reference to unremarkable physical examinations was not a germane reason to discount Ms. Roberts' testimony. And, as shown above, the record does not fully support the ALJ's conclusion that plaintiff's seizures were controlled with medication.  The Listings acknowledge that lay witness testimony is important to establish the pattern and frequency of seizures for the 11.02 and 11.03.  "Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." 20 C.F.R. Part 404, Subp. P, App. 1 § 11.00. This is particularly important where, as here, a claimant suffers from a prolonged post-ictal state and memory impairment associated with the seizures (AR. 532). Plaintiff's reports of experience and frequency are compromised due to the nature of the impairment. Witness testimony is critical for the

very reason the ALJ discredited Ms. Roberts' testimony. Therefore, the ALJ failed to give germane reasons for disregarding Ms. Roberts' hearing testimony as to plaintiff's adherence to his medication and seizure frequency.

Given Ms. Roberts' testimony and the more recent medical records, substantial evidence does not support the ALJ's conclusion that plaintiff's seizures are well controlled with medication. However, the Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. *See Molina*, *supra*, 674 F.3d at 1117-22; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009). In this case, the unsupported finding is not harmless.

The ALJ failed to specifically discuss Listing 11.02 or 11.03 at step three of the disability determination. Therefore, the Court can only infer from the decision that the ALJ found plaintiff did not meet an 11.00 listing because of inconsistent medication and resulting seizure frequency. If this is indeed the reason for the ALJ's conclusion, the lack of substantial evidence directly impacts the validity of the disability analysis at the step three finding. Plaintiff's continued seizures while on medication may satisfy one of the criteria of Listing 11.02 or 11.03.

Because the ALJ did not make findings as to the criteria for 11.02 or 11.03, the Court cannot conclusively determine that plaintiff meets either of the epilepsy Listings. Further proceedings are necessary to determine whether plaintiff meets Listing 11.02 or 11.03. The case must be reversed and remanded for the ALJ to revisit the issue of plaintiff's medication compliance and seizure frequency, specifically address whether plaintiff satisfies Listing 11.02 or 11.03, and complete the disability analysis as required.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 15th day of December, 2015.

J. Richard Creatura
United States Magistrate Judge